IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TAYLOR MORRISON OF TEXAS, INC. and TAYLOR WOODROW COMMUNITIES – LEAGUE CITY, LTD., | § § § § § | |
| *Plaintiffs,* | § § | |
| VS. | § § | Civil Action No. 3:25-cv-00028 |
| HARTFORD FIRE INSURANCE COMPANY. and WESTERN WORLD INSURANCE COMPANY | § § § § | |
| *Defendants.* | § § | |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TAYLOR MORRISON OF TEXAS, INC., and TAYLOR WOODROW COMMUNITIES—LEAGUE CITY, LTD., (hereinafter referred to as "Plaintiff(s)"), and files this Original Complaint against HARTFORD FIRE INSURANCE COMPANY. (hereinafter, "The Hartford") and WESTERN WORLD INSURANCE COMPANY (hereinafter, "Western World") (also hereinafter cumulatively referred to as "Defendant(s)"), and in support thereof would respectfully show the court as follows:

1.

## I. Parties

1.    Plaintiff Taylor Morrison of Texas, Inc. is a citizen of the states of Arizona and Texas. Taylor Morrison of Texas, Inc. is incorporated in Texas and maintains its principal place of business in Scottsdale, Arizona. Plaintiff Taylor Woodrow Communities—League City, Ltd. is a citizen of the states of Arizona and Texas. Taylor Woodrow Communities—League City, Ltd. is owned by: a) sole general partner Taylor Woodrow Homes Houston (GP), LLC which is itself a Texas limited liability company owned by sole member Taylor Morrison of Texas, Inc.; and b) sole limited partner Taylor Morrison of Texas, Inc. (both Plaintiffs hereinafter referred to collectively as "Taylor Morrison" or "Plaintiffs").

2.    Defendant, Hartford Fire Insurance Company, is a Connecticut company, whose principal place of business is located at One Hartford Plaza, T-3, Hartford, CT 06155, and is in the business of selling insurance in the State of Texas. Hartford Fire Insurance Company may be served with citation through its registered agent for service in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas

75201.  Hartford Fire Insurance Company has not yet filed an Answer in this case.

3.      Defendant, Western World Insurance Company, is a New Jersey company, whose principal place of business is located in Parsippany, New Jersey and is in the business of selling insurance in the State of Texas.  This Defendant may be served with citation through the Texas Department of Insurance, General Counsel Division, P.O. Box 12030, Austin, Texas 78711.  Western World Insurance Company has not yet filed an Answer in this case.

## II. Jurisdiction

4.      The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a) because Plaintiffs and Defendants are citizens of different U.S. states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5.      This Court has jurisdiction over Defendants because their contacts in Texas are so continuous and systematic as to render Defendants essentially at home in Texas. This Court also has specific personal jurisdiction because Defendants have purposely availed

themselves of the privileges of conducting business in Texas and their contacts in Texas give rise, or are related to, Plaintiffs' claims.

## III. Venue

6.    Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## IV. Facts

7.    On March 7, 2015, Tony and Michelle Ha contracted with Taylor Morrison for their new home at 4720 Sabero Ln. in League City, Texas. *See* Exhibit A. During the home's construction, Big Tex Air Conditioning was the subcontractor which designed and installed the HVAC system in the Has' home.

8.    Big Tex and Taylor Morrison entered into a Master Vertical Services agreement which required Big Tex to obtain and maintain insurance in varying amounts. *See* Exhibit B. Big Tex complied with that term of the contract by obtaining and maintaining Commercial General Liability policies during the construction of the Has' home and named Taylor Morrison as an additional insured pursuant to their contract.

9.    In 2014 and 2015, during the construction of the Ha home, The Hartford and Western World issued policies to Big Tex covering any property damage caused by Big Tex's negligence. *See* Exhibits C (46 UUN QT6745 (08/06/13 to 08/06/16).   Also see, Exhibits D Western World Insurance Policies.   As an additional insured, Taylor Morrison was entitled to both a duty to defend and a duty to indemnify for any property damages caused by Big Tex to the Ha home.

### a. The HVAC Design and Installation was clearly defective

10.    In late 2018, the Has began to develop concerns about excessive interior humidity and evidence of moisture damage in their home. As a result of dealing with persistent moisture-related odors and visible condensation in the home, Taylor Morrison had the home tested by Mold Inspection Sciences (MIS).

11.    On June 25, 2019, MIS issued a report finding "elevated moisture content," and "water damage or staining." *See* Exhibit E. The report concluded that the visual inspection and lab results required remediation in the family room, master bedroom, master bathroom, powder room, and attic around the HVAC unit and its components. MIS recommended that a "licensed professional evaluate and repair…all

water intrusion and/or excess moisture issues discovered." The report also recommended that a restoration company "properly dry out all areas/materials with excess moisture content." And finally, that a licensed HVAC contractor "evaluate and repair" the issues with the HVAC system.

12.    The Has had the home's HVAC system inspected by Vanderford Air on December 17, 2018. Vanderford Air determined that it was necessary to replace the HVAC unit including all duct work and associated distribution lines, return lines and vents. In addition, the fresh air duct needed to be conditioned before entering the home by installing a whole house dehumidifier. The cost for total replacement of both systems, along with a dedicated dehumidifier, UV lights, complete duct system redesign/replacement, media filters, solar attic fan, and professional installation was $34,864. This price, however, did not include the demolition/removal of the existing equipment under remediation protocol or the costs of installation of additional attic ventilation needed and is at least 5% below current pricing.

13.    On July 8, 2019, Norex Engineering, who was hired by Taylor Morrison, issued another report which analyzed the Has' HVAC system

following an inspection in May of 2019. *See* Exhibit F. That more in-depth engineering report revealed a number of issues with the home's HVAC system.

14.    Michael Scanlon, P.E., conducted an analysis of the home's heating, ventilation, and air conditioning systems. He noted that at the time the home was built, the city of League City operated under the 2009 International Residential Code, International Mechanical Code, and International Energy Conservation Code.

15.    Mr. Scanlon explains that the International Building Codes do not address all building standards, so "manufacturers' standards and guidelines and industry guidelines are used either in full or to supplement the code." The Air Conditioning Contractors of America sets standards and best practices for the HVAC industry particularly in the areas of system design, installation standards, and maintenance. Towards that end, the ACCA promulgates both Manual J and Manual S for HVAC contractors.  "Manual J" refers to a calculation method used to determine the heating and cooling load of a building, essentially figuring out how much energy is needed to maintain comfortable temperatures,

while Manual S is the process of selecting the appropriate HVAC equipment based on the load calculations from Manual J.

16.    Mr. Scanlon found that the load calculations or application were incorrect. For instance, the system was calculated to be 158% of the upstairs load requirement, which is significantly over-sized. Manual J aims to calculate the exact heating and cooling loads needed for comfort, and systems should be sized close to this load within the ACCA's recommended range (90% to 115%). And although the downstairs' system was within the ACCA standards at 112% of the required load, it still suggests an overestimation in the load calculation or application, where ideally, the system should be sized closer to 100% of the calculated load.

17.    Because Norex was not provided with the original Manual J calculations used for permitting, it is possible that these calculations might not have been done, were done incorrectly, or were not adhered to during the installation.

18.    Further, the HVAC equipment (14ACXS024-230A17 + CH35-24A-2F) significantly exceeded the calculated load by 158%, which violates Manual S guidelines that require equipment to be matched closely with the calculated load from Manual J to avoid over-sizing issues

like short cycling, inefficiency, and discomfort from poor humidity control.

19.     Other Manual S violations include failure to consider zoning needs appropriately during equipment selection, leading to the upstairs zone being excessively over-sized while the downstairs zone was just within the acceptable range. Also, there was no lower limitation of thermostat setting implemented exacerbating the capacity mismatch issues.

20.     In short, each of the experts who have investigated the cause of the home's excessive interior moisture and evidence of moisture damage have pointed the finger at the HVAC system.

### b. Litigation Begins

21.     In May of 2019, the Has made a demand for repairs on Taylor Morrison pursuant to the Texas Residential Construction Liability Act. On April 27, 2021, Taylor Morrison's attorneys told Big Tex under no certain terms that, "If there is a finding of liability against Taylor Morrison, Taylor Morrison will look to your company for indemnity per the terms of its contract with you. This notice constitutes a formal demand concerning your duty to defend the suit and any subsequent

arbitration related to the suit. If your company refuses to defend, it will be bound in any subsequent litigation between yourself and Taylor Morrison to the factual determinations made in the original judgment." *See* Exhibit G.

22.    After the Has filed their original petition against Taylor Morrison Taylor Morrison brought Big Tex into the lawsuit alleging that Big Tex's negligent design and installation of the home's HVAC system was the proximate cause of the Has' damages.

### c. Taylor Morrison makes a claim on The Hartford

23.    In 2021, attorneys for Taylor Morrison sent written notice of Has' lawsuit to Big Tex's CGL carrier The Hartford. *See* Exhibit H.  On October 14, 2021, The Hartford responded (*See* Exhibit I) acknowledging Taylor Morrison's tender of defense and indemnity and responding that Taylor Morrison was probably an additional insured by contract, however, since Taylor Morrison could not establish that Big Tex installed the HVAC at the Ha house, no defense would be provided.

24    The Hartford denial continued that even if Taylor Morrison were shown to be an additional insured by contract, the "other insurance

provision" of the operative policy in effect at the time made Taylor

Morrison's insurance "excess" to The Hartford's policy.

25.    That policy states as follows:

"4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.  Primary Insurance

This insurance is primary except when b. below applies. If other insurance is also primary, we will share with all that other insurance by the method described in c. below.

b.  Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

....

(7) When You Add Others As An Additional Insured To This Insurance

Any other insurance available to an additional insured. However, the following provisions apply to other insurance available to any person or organization who is an additional insured under this Coverage Part:

**(a) Primary Insurance When Required By Contract**

**This insurance is primary if you have agreed in a written contract, written agreement or permit that this insurance be primary**. If other insurance is also primary,

11.

we will share with all that other insurance by the method described in c. below. (emphasis added).

(b) Primary and Non-Contributory To Other Insurance When Required By Contract

If you have agreed in a written contract, written agreement or permit that this insurance is primary and non-contributory with the additional insured's own insurance, **this insurance is primary and we will not seek contribution from that other insurance**." (emphasis added).

26. After quoting this same provision, The Hartford declared in their denial "[t]he Policies are "excess over any other insurance, whether primary, excess, contingent, or any other basis" when Big Tex adds another organization as an additional insured to the Policies unless Big Tex agreed in a written contract, written agreement or permit that Big Tex's insurance is primary or primary and non-contributory. If the Subcontracts are applicable to the Projects at issue in the Lawsuits, which has not yet been established, the Subcontracts do not require the additional insured coverage afforded to TM be primary or primary non-contributory."

27. In making this denial, The Hartford acknowledged that "TM entered into two subcontract agreements with Big Tex on or about June 2, 2009 ("09 Subcontract") and December 12, 2013 ("13 Subcontract")..."

The 2013 Subcontract that The Hartford references provides in article 8 that Big Tex "shall procure and maintain at their own expense, all applicable insurance in accordance with the terms and in the amounts set forth in Exhibit E." *See Id*. Paragraph 7 to Exhibit E of the 2013 Subcontract states as follows:

> "7. The insurance afforded by the policies required under this Exhibit E, and by any other policies Contractor may maintain in connection with the Work, shall be **primary and non-contributory** insurance as to any claim, liability, loss, damage, accident or occurrence directly or indirectly arising out of or relating to the Work or this Agreement, and any insurance maintained by or available to Taylor Morrison shall be excess and secondary insurance." (emphasis added).

28.    Recall that The Hartford denied coverage because "the Subcontracts do not require the additional insured coverage afforded to TM be primary or primary non-contributory."   However, the 2013 Subcontract and the insurance policy clearly provide that The Hartford policy "**shall be primary and non-contributory**" and therefore, defense and indemnity should have been provided to Taylor Morrison.

29.    Taylor Morrison is entitled to the benefits of defense and indemnity funds owed as an additional insured under The Hartford's policy.

### d. Taylor Morrison makes a claim on Western World

30.    Taylor Morrison first made a demand on Western World on October 4, 2022. AIG Claims, on behalf of Western World, responded on January 3, 2023, denying that Taylor Morrison was an additional insured of Big Tex. To substantiate that claim, AIG/Western World looked at the *non-applicable 2009* Master Agreement. AIG stated that Western World's policy is "an ECC (Engineers, Consultants and Contractors) Primary Common Policy carrying Contractors Pollution Liability and Mold & Mildew coverage, rather than any measure of CGL coverage…Because of this, and because the Taylor Morrison/Big Tex Master Agreement requires Big Tex to secure insurance providing additional coverage to Taylor Morrison only regarding Big Tex's (a) Worker's compensation, (b) Commercial General Liability, and (c) Comprehensive Automobile Liability Insurance policies, the Western World Primary Common Policy provides no potential additional insured coverage to Taylor Morrison and accordingly Western World must decline your clients' 'additional insured' request."

31.    In arriving at this conclusion, Western World quoted the *non-applicable 2009 Agreement* as stating:

14.

Your letter references the Master Agreement "additional insured" obligations running from Big Tex to Taylor Morrison as follows,

> Contractor [Big Tex] further agrees that any subcontract shall provide that Taylor Morrison of Texas, Inc., Taylor Morrison, Inc., and its affiliates of all tiers and any additional parties set forth in the applicable Purchase Order, will be an additional insured on all required insurance policies except workers compensation.

and the Master Agreement specifies the required Big Tex policies for the project(s) as follows:

> 7.    Insurance. During the entire term of the Agreement and all applicable Work Orders, General Contractor shall procure and maintain at its own expense, for all Work at the job site:

> (a)    Workers compensation insurance in strict accordance with Texas law with employers' liability insurance in the amounts set forth in Schedule "A".

> *      *      *

> (b)    Commercial General Liability insurance (to include "completed operations" coverage) insuring TM and General Contractor against liability for injury to persons (including death) and damage or destruction of property arising out of the Work (without regard to the negligence or breach of any duty by TM or General Contractor or their respective employees). The policy shall be issued on an occurrence basis with limits, as to each risk, of not less than the amount set forth on Schedule "A", attached hereto and made a part hereof, or such greater amount as then prevails in any like coverage carried by General Contractor.

> (c)    Comprehensive Automobile Liability insurance, covering the use of all owned, non-owned, or hired motor vehicles employed in or about the performance of General Contractor's Work, indemnifying General Contractor relative to liability for injury to persons, including death, and damage to property, caused by such vehicles in the amount, as to each risk on an occurrence basis, of not less than the amount set forth on Schedule "A", attached hereto and made a part hereof, or such greater amount as then prevails in any like coverage carried by General Contractor.

32.    *However*, *this language does not appear in the subcontract that was operative between Big Tex and Taylor Morrison at the time the Ha home was constructed and purchased in 2014 and 2015.* Instead, the 2013 Master Agreement stated that Exhibit E would govern, **and** paragraph 7 states that the Agreement applies **not only** to the "policies required" **but also** to "**any other policies Contractor may maintain in connection with the Work**." This provision shows that Big Tex and any subsequent insurer (Western World) understood that not only would

15.

Taylor Morrison be an additional insured on the required policies but also on *any other* policies maintained by Big Tex that covered Big Tex's work on Taylor Morrison projects, such as Western World's Pollution policy.

## V. CAUSES OF ACTION

### COUNT 1—BREACH OF INSURANCE CONTRACT
#### PLAINTIFFS V. THE HARTFORD

33.    There was a valid and binding contract between Taylor Morrison and Big Tex Air Conditioning by which Big Tex Air Conditioning agreed to defend and indemnify Taylor Morrison as well as add Taylor Morrison as an additional insured on its Commercial General Liability policies in effect at the time the home was constructed and sold to the Has. As an additional insured, The Hartford owed Taylor Morrison the same duties to defend and indemnify under its insurance policies as Big Tex Air Conditioning, the named insured on the insurance contract. The Hartford's failure to defend and indemnify Taylor Morrison constitutes a breach of the insurance contract to which Taylor Morrison is an additional insured.  Based on information and belief, The Hartford has paid all or part of Big Tex Air Conditioning's attorney fees and expenses, while denying Taylor Morrison the same policy benefits, whether under a reservation of rights or not.

34.    Taylor Morrison, as additional insured on the insurance contract, was entitled to adequate indemnity and/or defense costs under the terms of the policies in question, and under the laws of the state of Texas.

## COUNT 2—INSURANCE CODE VIOLATIONS, UNFAIR OR DECEPTIVE ACTS OR PRACTICES
### PLAINTIFFS V. THE HARTFORD

35.    The Hartford's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541 and § 542.

36.    The Hartford misrepresented to the claimant a material fact or policy provision relating to the coverage at issue, to wit: 1) that there was not enough information to decide whether Big Tex performed work in the Mar Bella neighborhood in order to provide additional insured status; and 2) that the policy was "excess" and not primary for the purposes of defense and indemnity. With regard to whether Big Tex performed work on the Has' house, The Hartford simply had to ask its named insured, Big Tex!  In addition, information was provided that Big Tex performed work at the Has' house. Taylor Morrison clearly provided The Hartford with adequate information to establish that the insurance policy covered Big

17.

Tex's work at Taylor Morrison's Mar Bella neighborhood, including the Ha house. Further, The Hartford had a copy of the 2013 Subcontract between Big Tex and Taylor Morrison which clearly stated that the policy was primary and non-contributory. Both of these misrepresentations are material to the coverage at issue in this case. Tex. Ins. Code §541.060(a)(1) Additionally, these misrepresentations also constituted "refusing, failing, or unreasonably delaying a settlement off under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered…" *Id.* at §541.060(a)(5).

37.    The Hartford's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim, even though The Hartford's liability under the Policies was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(2)(A).

38.    Defendant The Hartford's unfair settlement practice, as described above, of failing to promptly provide Taylor Morrison with a reasonable explanation of the basis in the Policies, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim,

constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(3).

39.    The Hartford's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Taylor Morrison, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(4).

## COUNT 3—INSURANCE CODE VIOLATIONS, UNFAIR CLAIM SETTLEMENT PRACTICES
### PLAINTIFFS V. THE HARTFORD

40.    The Hartford's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by Tex. Ins. Code §541 & 542

41.    While The Hartford acknowledged receipt of Taylor Morrison's claim and allegedly commenced investigation of the claim, the denial based on excess coverage violated the prompt payment of claims statute. At no time has The Hartford requested from Taylor Morrison any items, statements, and/or forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of Tex. Ins. Code §542.055.

19.

42.    The Hartford's failure to notify Taylor Morrison in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. Tex. Ins. Code §542.056.

43.    Defendant The Hartford's delay of the payment of Taylor Morrison 's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. Tex. Ins. Code § 542.058.

44.    The Hartford's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured(s) in insurance contracts.

45.    The Hartford's failure, as described above, to adequately and reasonably investigate and evaluate Taylor Morrison's claim, although, at that time, The Hartford knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.  Further, after defending Big Tex for approximately five years The Hartford became aware the Big Tex did in fact perform the work and that The Hartford's policy was

primary and non-contributory and still refused to provide Taylor Morrison with a defense or indemnity.

46.    The Hartford's breach of its duties proximately caused injury to Taylor Morrison, and as a direct and proximate result of the actions and/or omissions of Defendant Taylor Morrison has sustained actual damages.

### COUNT 4—BREACH OF INSURANCE CONTRACT
#### PLAINTIFFS V. WESTERN WORLD

47.    There was a valid and binding contract between Taylor Morrison and Big Tex Air Conditioning by which Big Tex Air Conditioning agreed to defend and indemnify Taylor Morrison as well as add Taylor Morrison as an additional insured on all of its polices and those polices would be primary, non-contributory insurance policies. As an additional insured, Western World owed Taylor Morrison the same duties to defend and indemnify under its insurance policies as Big Tex Air Conditioning, the named insured on the insurance contract. *See* Exhibits D. Western World's failure to defend and indemnify Taylor Morrison (*See* Exhibit J) constitutes a breach of the insurance contract to which Taylor Morrison is an additional insured.  Paragraph 7 clearly states that, "the insurance afforded by the policies required under this Exhibit E, ***and by any other***

*policies Contractor may maintain* (Western World) *in connection with the Work, shall be primary and non-contributory insurance as to <u>any</u>* claim, liability, loss, damaged, accident, or occurrence directly or indirectly arising out of or relating to the Work or this Agreement, and any insurance maintained by or available to Taylor Morrison shall be excess and secondary insurance."

48.    Taylor Morrison, as additional insured on the insurance contract, was entitled to adequate indemnity and/or defense costs under the terms of the policies in question, and under the laws of the state of Texas.

## COUNT 5—INSURANCE CODE VIOLATIONS, UNFAIR OR DECEPTIVE ACTS OR PRACTICES
### PLAINTIFFS V. WESTERN WORLD

49.    Western World's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by Tex. Ins. Code § 541.060(a) and § 541.141.

50.    Western World misrepresented to the claimant a material fact or policy provision relating to the coverage at issue, to wit: representing that the 2009 Master Service Agreement language governed the Ha house

and misrepresenting that the correct 2013 language which provided that Taylor Morrison was covered under "any other policies Contractor may maintain in connection with the Work" was non- applicable or non-existent. Taylor Morrison clearly provided Western World with adequate information to establish that the insurance policy covered Big Tex's work at Taylor Morrison's Mar Bella neighborhood, including the Ha home. AIG/Western World even acknowledged as much in their wrongful denial stating that "the Ha's suit's... 'four corners' may allege liability caused...by Big Tex's work at the project location(s) performed for Taylor Morrison as required for "additional insured coverage of Taylor Morrison under the CGL insurer's policies likely "additional insured" endorsements." This statement shows that AIG and Western World believed that they would be additional insureds, if only the policy name was changed to CGL from CPL. However, since **_any_** policies that affected the work applied, this was clearly a wrongful denial of a properly covered claim.

51.    This misrepresentation was material to the coverage at issue in this case. Tex. Ins. Code § 541.060(a)(1) Additionally, this misrepresentation also constituted "refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the

basis that other coverage may be available or that third parties are responsible for the damages suffered…" *Id.* at § 541.060(a)(5).

## COUNT 6—INSURANCE CODE VIOLATIONS, UNFAIR CLAIM SETTLEMENT PRACTICES
### PLAINTIFFS V. WESTERN WORLD

52.    Western World's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by Tex. Ins. Code §541 & 542

53.    While Western World acknowledged receipt of Taylor Morrison's claim, the denial of coverage violated the prompt payment of claims statute. At no time has Western World requested from Taylor Morrison any items, statements, and/or forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of Tex. Ins. Code §542.055.

54.    Defendant Western World's delay of the payment of Taylor Morrison 's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. Tex. Ins. Code § 542.058.

55.    Western World's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured(s) in insurance contracts.

56.    Western World's failure, as described above, to adequately and reasonably investigate and evaluate Taylor Morrison's claim, although, at that time, Western World knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.  Further, Western World's policy was primary and non-contributory and still refused to provide Taylor Morrison with either a defense or indemnity.

57.    Western World's breach of its duties proximately caused injury to Taylor Morrison, and as a direct and proximate result of the actions and/or omissions of Defendant Taylor Morrison has sustained actual damages.

## VI. CONDITIONS PRECEDENT, ETC.

58.    All conditions precedent necessary to maintain this action have been performed or have occurred. Alternatively, The Hartford and Western World waived and/or is estopped to assert performance of conditions precedent.

25.

59.    The Hartford and Western World waived and/or is estopped from asserting its alleged defenses to liability and its alleged defenses to claimed damages and attorneys' fees.

60.    Taylor Morrison asserts that they did not and reasonably could not discover the claimed HVAC design, installation and construction defects and resulting damages in the Home prior to Taylor Morrison's investigation of the Home.

## VII. DAMAGES

61.    As a result of the Big Tex's work (insured by Defendants The Hartford and Western World) on the Has home the Has have suffered the following damages which were actually and proximately caused by the Big Tex work and insured by Defendant The Hartford and Western World and paid for by Taylor Morrison:

62.    The Ha plaintiffs were awarded $160,000.00 in damages plus $26,243.61 in expenses by the Special Master in the underlying case. The Special Master specified that of that $160,000 award, $36,607.20 would go towards repair and replacement of the home's HVAC system. Additionally, $2,266.00 was allocated to reimburse the Has for their out-of-pocket repairs. An additional $10,000.00 was allocated to the Ha's two

minor children for their own personal injuries. While these sums were allocated to fix the sources of the home's excessive interior moisture and evidence of moisture damage, the remainder of that award, or $78,126.80 would go towards the general expenses related to the repair and remediation of the excessive interior moisture and evidence of moisture damage.

63.    As the subcontractor who negligently designed, and installed the home's HVAC system comprising the majority of the cause of the home's interior excessive moisture and evidence of moisture damage, Big Tex and its insurance carriers The Hartford and Western World are fully responsible for the $36,607.20 HVAC repair allocation, and for the $78,126.80 to remediate the excessive moisture issues in the home for a total of $114,734.00 in HVAC damages to remediate, repair and replace.

64.    In addition to Big Tex's and/or its insurance carriers' proportionate liability of the homeowners' damages, Big Tex and/or its insurance carriers are liable to Taylor Morrison for its reasonable attorney's fees and expenses.

65.    Taylor Morrison was entitled not only to indemnification for the Big Tex caused damages to the homeowner, but was also entitled to

a defense in the same way as Big Tex. At no time did Big Tex or its insurance carriers follow through on their contractual obligations to defend or indemnify leaving Taylor Morrison with attorney's fees of $156,245.50 and expenses in the amount of $17,023.59 for a total of $173,269.09.

66.    Therefore, Taylor Morrison seeks $288,003.09 in damages to date, plus attorney fees and expenses incurred in pursuing these damages.

67.    The Plaintiffs seek actual damages for all economic injuries pursuant to Tex. Insurance Code § 541 and 542. Plaintiffs allege that the Defendants acted knowingly, which entitles the Plaintiffs to recover treble damages under Texas Insurance Code 541.152(b). The Plaintiffs are also entitled to statutory damages of 18% per year of the amount of the claim pursuant to Texas Insurance Code section 542.060(a).

68.    Taylor Morrison Plaintiffs seek to recover their reasonable and necessary attorneys' fees recoverable under Chapter 38.001 of the Texas Civil Practice and Remedies Code.

## X. JURY DEMAND

69.    Taylor Morrison Plaintiffs demand a jury trial and tender the appropriate fee with this Petition.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Taylor Morrison Plaintiffs pray this Court hold defendant insurers The Hartford and Western World liable for the many breaches of their contracts with Taylor Morrison. Taylor Morrison Plaintiffs pray this Court grant them all relief available in law and in equity.

Respectfully submitted,

EILAND & BONNIN, PC

A Craig Eiland
State Bar No. 06502380
S.D. Texas Bar No. 9076
Patrick H. Gurski
State Bar No. 24091105
S.D. Texas Bar No. 2646947
2200 Market Street, Suite 501
Galveston, Texas 77550
Telephone: (409) 763-3260
Facsimile: (409) 763-8154
Email: ceiland@eilandlaw.com
Email: pgurski@eilandlaw.com

**MILLS SHIRLEY L.L.P.**

Fred D. Raschke
Texas Bar No. 16551450
S.D. Texas Bar No. 7123
2200 Market Street, Suite 300
Galveston, Texas 77550
Phone: (409) 761-4028
Facsimile: (409) 763-2879
Email: fraschke@millsshirley.com

**BUSH RUDNICKI SHELTON, P.C.**

*/s/ James Rudnicki – by permission*

James Rudnicki
State Bar No. 24006148
Diana Alcala
State Bar No. 24007590
Jennifer Taylor
State Bar No. 24102559
2508 Ashley Worth Blvd., Suite 200
Austin, Texas 78738
Telephone: 512-263-8408
Facsimile: 512-263-2562
Email: james@brstexas.com
Email: dalcala@brstexas.com
Email: jtaylor@brstexas.com

HODGE LAW FIRM, PLLC

_____
Shaun W. Hodge
State Bar No. 24052995
Old Galveston Square
2211 The Strand, Suite 302
Galveston, Texas 77550
Phone: (409) 762-5000
Facsimile: (409) 763-2300
Email: shodge@hodgefirm.com

**ATTORNEYS FOR PLAINTIFFS
TAYLOR MORRISON OF TEXAS,
INC. AND TAYLOR WOODROW
COMMUNITIES—LEAGUE CITY,
LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Amended Complaint was served in accordance with Rule 5 of the Federal Rules of Civil Procedure on all known counsel of record via email to counsel on this 27th day of February 2025.

_____
A. Craig Eiland